UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ERIC D. FREED, an individual, and FREED & WEISS LLC, an Illinois limited liability company, )
)
)
) 12 C 1477
Plaintiffs, )
) Judge Feinerman
vs. )
)
JPMORGAN CHASE BANK, N.A., )
)
Defendant. )

### MEMORANDUM OPINION AND ORDER

Eric D. Freed, an attorney, and Freed & Weiss LLC, a law firm, brought this suit against JPMorgan Chase Bank, N.A., alleging a single count of civil conspiracy to commit fraud under Illinois law. The case arises from a dispute between Freed and Paul M. Weiss, an attorney who owns or owned the LLC along with Freed. Freed alleges that Weiss plotted to exclude him from control of the LLC and to convert its assets to his own use, an allegation Freed is pursuing in a suit he filed against Weiss in Illinois state court. *Freed v. Weiss*, 2011 CH 41529 (Cir. Ct. Cook Cnty., Ill. filed Dec. 5, 2011). This case concerns what Freed claims to be Chase's involvement in the alleged Weiss plot.

Chase has moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Chase argues that neither plaintiff is entitled or empowered to bring this suit, the reasons being that the conspiracy claim belongs to the LLC and not to Freed individually, and that Freed lacks authority to cause the LLC to sue without Weiss's consent. And putting aside whether either plaintiff properly can bring this suit, Chase argues that the amended complaint fails to

adequately allege a conspiracy claim. The motion to dismiss is granted, though Plaintiffs are given an opportunity to replead.

**Background**

The amended complaint's well-pleaded factual allegations, though not its legal conclusions, are assumed to be true at this juncture. *See Munson v. Gaetz*, 673 F.3d 630, 632 (7th Cir. 2012); *Reger Dev., LLC v. Nat'l City Bank,* 592 F.3d 759, 763 (7th Cir. 2010). In evaluating a motion to dismiss, the court must consider "the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). The court also must consider additional facts set forth in Plaintiffs' opposition brief or supported by attachments to the brief, so long as those facts "are consistent with the pleadings." *Ibid*. The following sets forth the facts as favorably to Plaintiffs as permitted by the amended complaint and other materials that may be considered on a Rule 12(b)(6) motion. It bears mention that many of the facts are in dispute in Freed's state court case against Weiss.

Freed and Weiss were the two members and managers of the LLC. Doc. 13 at ¶¶ 2, 4, 9. Under their partnership agreement, Freed was entitled to 53% of the LLC's profits, and Weiss was entitled to the other 47% until (Freed asserts) Weiss voluntarily terminated from the LLC. *Ibid*.; Doc. 13-1 at 21. Weiss's wife, Jamie Saltzman Weiss ("Saltzman"), is an employee of the LLC. Doc. 13 at ¶ 5. Beginning as early as 2008, Weiss and Saltzman concocted a scheme to unlawfully cut Freed out of the LLC's management and ownership. *Id*. at ¶ 8. They planned to do this by taking control of the LLC's finances, moving the LLC's bank accounts from Bank of America to another bank where Freed would lack signatory authority over the funds, and

freezing Freed out of the LLC's operations by excluding him from its premises and computer system. *Ibid*.

Weiss and Saltzman settled on Chase as the destination for the LLC's funds. *Id*. at ¶ 9. They opened two accounts there, using fraudulent documents to convince Chase that they had authority to move the LLC's funds. *Id*. at ¶¶ 9-22. Plaintiffs allege that Chase failed to undertake due diligence in accepting Weiss's fraudulent documents and that even a simple investigation would have uncovered the fraud. *Id*. at ¶¶ 11, 18, 20, 22. Plaintiffs do *not* allege that Chase was actually aware of or sought to advance Weiss's plan at the time Weiss opened the accounts and transferred the funds to Chase.

In 2011, Freed sought to withdraw from the LLC some money he had previously loaned it. *Id*. at ¶ 23. Weiss construed this as a "voluntary withdrawal" by Freed from the LLC, and put into action his plan to block Freed from accessing the LLC's property, computer system, and bank accounts. *Ibid*. Weiss transferred the LLC's funds from Bank of America to the accounts he and Saltzman had opened at Chase. *Id*. at ¶ 24. Freed responded by sending Chase a letter asserting his legal authority over the LLC's funds and demanding that Chase immediately freeze the accounts Weiss had opened. *Id*. at ¶ 25; Doc. 13-1 at 29-32. Instead of complying, Chase (acting through an employee) contacted Weiss, alerted him to Freed's freeze demand, advised Weiss that the funds likely would be frozen in response to the demand, and aided Weiss in removing the funds before the accounts could be frozen by helping him obtain a $750,000 cashier's check and move the rest of the funds to another bank. Doc. 13 at ¶ 26. Several weeks later, the same Chase employee helped Weiss arrange to move other funds, which were then about to be deposited in the Chase accounts, to another bank. *Id*. at ¶ 27.

Freed and the LLC sued Weiss and Saltzman in Illinois state court, *id*. at ¶ 28, and brought this separate suit against Chase, also in state court. Chase removed the suit to federal court on the ground that it falls within the court's diversity jurisdiction. Doc. 1 at ¶¶ 7-15. The removal was appropriate. The parties are diverse. Freed is a citizen of Florida, while the LLC's members are citizens of Florida (Freed) and Illinois (Weiss, if indeed he remains a member), making the LLC a citizen of Florida and Illinois. *Id*. at ¶ 8; Doc. 13 at ¶¶ 1-2, 4; *see Thomas v. Guardsmark, LLC*, 487 F.3d 531, 534 (7th Cir. 2007) ("For diversity jurisdiction purposes, the citizenship of an LLC is the citizenship of each of its members."). Chase is a national banking association whose organization certificate lists Ohio as the location of its main office, Doc. 1 at ¶ 10, making Chase a citizen of Ohio. *See Wachovia Bank v. Schmidt*, 546 U.S. 303, 307 (2006) ("a national bank … is a citizen of the state in which its main office, as set forth in its articles of association, is located"). The amount-in-controversy requirement is satisfied by Plaintiffs' allegation that they suffered at least one million dollars in damages. Doc. 1-1 at ¶ 32.

## Discussion

Plaintiffs' sole claim in this case is that Chase's alleged actions constituted civil conspiracy to commit fraud. The parties agree that Illinois law controls, so that is the law the court will apply. *See McFarland v. Gen. Am. Life Ins. Co.*, 149 F.3d 583, 586 (7th Cir. 1998). "The elements of a civil conspiracy [under Illinois law] are: (1) a combination of two or more persons, (2) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means, (3) in the furtherance of which one of the conspirators committed an overt tortious or unlawful act." *Fritz v. Johnston*, 807 N.E.2d 461, 470 (Ill. 2004); *see also Adcock v. Brakegate, Ltd.*, 645 N.E.2d 888, 894 (Ill. 1994) (defining

civil conspiracy as "a combination of two or more persons for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means").

It is unclear whether the amended complaint seeks to implicate Chase in the entire scope of the supposed Weiss conspiracy or in merely a limited component of the conspiracy. The complaint describes a long-term plot by Weiss and Saltzman to deprive Freed of his share of the LLC's management and profits, which began as early as 2008 and encompassed Weiss and Saltzman's creation of the accounts at Chase, their transfer of the LLC's funds to those accounts, and their transfer of the funds out of Chase so as to evade Freed's freeze demand. Doc. 13 at ¶¶ 8-27. The complaint plausibly could be read as asserting that Chase was complicit in this entire scheme, for it alleges that Chase assisted Weiss and Saltzman in setting up their accounts and blames Chase for failing to exercise due diligence before accepting their fraudulent documentation. *Id*. at ¶¶ 9, 11, 18, 20, 22, 24.

If Plaintiffs indeed intend to stake that broad claim, their allegations are insufficient. The allegations assert that Chase aided Weiss and Saltzman in setting up and using accounts with Chase and that Chase fell short of the level of diligence that banks should exercise in such circumstances. Plaintiffs do not say that Chase was actually aware of Weiss and Saltzman's plot or that it knew they were doing anything wrongful; to the contrary, by alleging that Chase failed to make the investigation that would have uncovered the plot, Plaintiffs necessarily imply that Chase was ignorant of it. Nor could it plausibly be inferred from the facts alleged that Chase knew of the scheme, much less agreed to join it. "[A] civil conspiracy is based upon intentional activity," and "the element of intent is satisfied when a defendant knowingly and voluntarily participates in a common scheme." *Adcock*, 645 N.E.2d at 894. Conversely, "[t]here is no such thing as accidental, inadvertent, or negligent participation in a conspiracy," and "[a] defendant

who innocently performs an act which happens to fortuitously further the tortious purpose of another is not liable under the theory of civil conspiracy." *Ibid*.; *see also Jones v. City of Chicago*, 856 F.2d 985, 993 (7th Cir. 1988) (Illinois law). The amended complaint fails to allege that Chase knew of the conspiracy from its inception and intended to join it, and so Plaintiffs' claim must be dismissed to the extent it charges that Chase was involved in the entire conspiracy. The dismissal is without prejudice, so if Freed can allege consistent with Rule 11(b) that Chase knew of the conspiracy from its inception and intended to join it, he may file a second amended complaint with allegations to that effect.

The complaint also can be read to allege Chase's involvement in a limited component of the conspiracy. Upon learning that the LLC's funds had been transferred to Chase, Freed sent Chase a letter demanding that it freeze the accounts. Doc. 13 at ¶ 25. According to the amended complaint, "with full knowledge of" the freeze demand, a Chase employee "telephoned Weiss and Saltzman, told them of Freed's correspondence, informed them that the funds would likely be frozen, and aided and abetted Weiss and Saltzman in the removal of the LLC's funds from Chase Bank," and then, "acting on [the Chase employee's] advice and direction," Weiss obtained a cashier's check for some of the funds and transferred the rest to another bank. *Id*. at ¶ 26. The same employee emailed Weiss several weeks later with advice on how to divert funds that were soon to come into the account, also in evasion of Freed's freeze demand. *Id*. at ¶ 27. Finally, the amended complaint alleges that Chase's actions "were intended to assist Weiss and Saltzman in the perpetration of the fraud alleged herein." *Id*. at ¶ 30.

From these allegations, one could reasonably infer that Chase (through its employee) (1) combined with Weiss and Saltzman (2) for the purpose of accomplishing by concerted action an unlawful purpose—evading Freed's proper demand that Chase freeze the LLC's assets by

transferring them to another account that Freed would have difficulty reaching—and that (3) one of the conspirators, Weiss, committed an unlawful overt act in furtherance of the conspiracy by transferring the funds out of the Chase accounts without lawful authority to do so. The allegations therefore are sufficient to state a claim for civil conspiracy, limited to the evasion of Freed's freeze demand. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility [sufficient to survive a motion to dismiss] when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

Although the amended complaint adequately pleads this particular conspiracy claim against Chase, the question remains whether Freed and the LLC can bring that claim in this suit. Freed is not a proper plaintiff, at least not in his personal capacity, as shown by *Frank v. Hadesman & Frank, Inc.*, 83 F.3d 158 (7th Cir. 1996) (Illinois law). Frank, one of the principals of an Illinois corporation called Hadesman & Frank, Inc., sued his erstwhile colleague Hadesman for allegedly "making off with the corporation's business, effectively transferring it to a new firm, Hadesman & Associates, Inc., from which Frank has been excluded." *Id*. at 159. In other words, Frank alleged "that the entire firm was hollowed out and its business transferred to a new corporation." *Id*. at 160. The Seventh Circuit held that the claim against Hadesman belonged not to Frank himself, but to the corporation, because "Illinois follows the widespread rule that an action for harm to the corporation must be brought in the corporate name," and because the "hollowing out" alleged by Frank "injure[d] all investors alike" and so had to be brought by the company itself, or by Frank in a shareholder derivative suit, rather than in a direct action. *Ibid*.; *see also Mann v. Kemper Fin. Cos., Inc.*, 618 N.E.2d 317, 324 (Ill. App. 1992) ("A stockholder of a corporation does not acquire standing to maintain an action in his own right, as

a shareholder, when the alleged injury is inflicted upon the corporation and the only injury to the shareholder is the indirect harm which consists in the diminution in value of his corporate shares resulting from the impairment of corporate assets. In this situation, it has been consistently held that the primary wrong is to the corporate body and, accordingly, that the shareholder, experiencing no direct harm, possesses no primary right to sue."). Significantly, the Seventh Circuit held that this conclusion was unaffected by the fact that, because the corporation was a closely held corporation with only two investors and one of them (Hadesman) was the alleged wrongdoer, Frank was the only human being who actually suffered from the harm allegedly done to the corporation. *Frank*, 83 F.3d at 160-61; *see also Small v. Sussman*, 713 N.E.2d 1216, 1219-20 (Ill. App. 1999) (declining to carve an exception for closely held corporations to requirements for bringing derivative suits).

By the same token, the harm alleged by Freed is harm to the LLC: the complaint repeatedly refers to the funds at issue as "all of the assets of the LLC" or "all of the LLC's funds," Doc. 13 at ¶¶ 23-26, and misappropriating a company's assets is an archetypical example of harm to the company requiring a derivative action. *See Frank*, 83 F.3d at 161; *Small*, 713 N.E.2d at 1220 ("The alleged diversion of DSI profits to other entities is a classic injury to the corporation. … Such a diversion would affect a company's performance generally, and would affect all shareholders only indirectly."); *Elmhurst Consulting, LLC v. Gibson*, 219 F.R.D. 125, 127 (N.D. Ill. 2003). True, Freed was indirectly harmed by Weiss's alleged misappropriation of the LLC's assets because the misappropriation deprived him of his 53% share of the firm's profits, but it is invariably true that what harms a corporation (or an LLC) harms its shareholders by decreasing the value of their interest in the firm. That does not change the fact that a direct action is unavailable where the harm is a general one inflicted upon the company, rather than

directly on a specific stockholder or officer. *See Twohy v. First Nat'l Bank of Chi.*, 758 F.2d 1185, 1194 (7th Cir. 1985) ( "Under general principles of United States corporate law, as well as under Illinois law, a stockholder of a corporation has no personal or individual right of action against third persons for damages that result indirectly to the stockholder because of an injury to the corporation.").

It is clear that Freed's claim is being pursued on his own behalf and not derivatively on the LLC's behalf. The original complaint (Doc. 1-1), which was filed in state court, did not style itself as a derivative action and made no effort to satisfy the requirements under Illinois law for filing derivative actions on behalf of an LLC. *See* 805 ILCS 180/40-1, 180/40-5, 180/40-10. The amended complaint and Freed's brief opposing dismissal do not make reference to a derivative claim, and the amended complaint—which was filed after the case was removed from state court—makes no effort to satisfy the pleading requirements of Rule 23.1(b), which governs derivative actions in federal court. *See Lefkovitz v. Wagner*, 395 F.3d 773, 776 (7th Cir. 2005) ("Although most derivative suits are brought on behalf of corporations, a derivative suit can be brought on behalf of a partnership or other unincorporated firm."); *Frank*, 83 F.3d at 160 (discussing procedural requirements of derivative claims). Freed's claim therefore must be dismissed. *See Lefkovitz*, 395 F.3d at 776 ("No party has sought to have this case litigated as a derivative suit; but if individual partners sue to enforce rights belonging to a nonconsenting third party, namely the partnership, the court must dismiss the suit.").

It bears mentioning that this holding does not turn on "standing" in the constitutional sense. Freed certainly suffered an injury-in-fact if the LLC in which he has a stake was wrongfully deprived of its funds. *See Rawroof v. Texor Petrol. Co.*, 521 F.3d 750, 756-57 (7th Cir. 2008). Rather, the question turns on ascertaining the real party in interest under Rule 17(a),

which requires that every action "be prosecuted in the name of the real party in interest." *See ibid.*; *Frank*, 83 F.3d at 159. The real party in interest here is the LLC, so the next question is whether the LLC has properly brought this suit.

Chase argues that the amended complaint does not adequately plead that the LLC is authorized to bring this suit. Under Illinois law, each of an LLC's members (in a member-managed LLC) or managers (in a manager-managed LLC) "has equal rights in the management and conduct of the company's business," and "any matter relating to the business of the company may be decided by a majority of the" members or managers. 805 ILCS 180/15-1(a), (b). This means that an LLC can bring a lawsuit only if a majority of its members or managers agree that it should do so.

Here, the LLC appears to have had two members and managers, Freed and Weiss. Neither member, standing alone, is a majority of the LLC's members; a "majority" is more than half, so a majority of two is two. *See Field v. Boyle*, 503 F.2d 774, 779 (7th Cir. 1974) ("'majority' means one more than half of those voting on a particular question"); *United States v. Holcomb*, 657 F.3d 445, 454 (7th Cir. 2011) (Williams, J., dissenting from the denial of rehearing en banc) (noting that "half does not a majority make" in agreeing that a 5-5 split results in the denial of en banc review, which requires a simple majority of the voting active judges, *see* 7th Cir. Operating Procedure 5(d)(1)). It follows that the LLC can bring this suit only if Freed and Weiss have both agreed that it should do so. The amended complaint does not allege that Weiss consented to the suit, and the only reasonable conclusion is that Weiss did not consent, as the suit arises out of Weiss's alleged wrongdoing. The amended complaint does not allege that Freed has a controlling interest in the management of the LLC that would allow him to constitute a majority on his own (assuming that Illinois law would allow this). The amended

complaint does allege that Freed has a majority (53%) entitlement to the LLC's profits, Doc. 13 at ¶ 2, but that is irrelevant—interests in profits are distinct from interests in control, and Freed gives no reason to believe that Weiss, by agreeing that his share of the profits would be 47%, also agreed to give Freed majority control of the LLC.

The amended complaint does allege in passing that Weiss is no longer a member of the LLC: "Weiss, *until he voluntarily terminated from the LLC*, was a member and manager of the LLC and was entitled to 47% of the LLC's profits." Doc. 13 at ¶ 4 (emphasis added). That is the amended complaint's only reference to Weiss's having terminated from the LLC, and Plaintiffs make no reference to it in their brief opposing dismissal. If Weiss indeed terminated from the LLC, that would leave Freed as the LLC's sole member and manager, thus empowering him to cause the LLC to sue. But the court need not accept as true the amended complaint's assertion that Weiss "voluntarily terminated from the LLC," because it is a bare legal conclusion rather than a factual allegation. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," *Iqbal*, 556 U.S. at 678, and the court is "not bound to accept as true a legal conclusion couched as a factual allegation," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Plaintiffs do not say what facts underlie their submission that Weiss voluntarily terminated from the LLC. For instance, had Plaintiffs alleged that Weiss sent Freed a letter saying, "I hereby resign and leave the LLC to you," or that Weiss withdrew more than the 47% of the LLC's profits to which he was entitled, the court would accept that factual allegation as true at this stage. The court then would decide as a legal matter whether Weiss's alleged actions indeed had the legal effect of "voluntarily" terminating him from the LLC, by applying relevant law such as the partnership agreement, which provides that "Voluntary termination is defined as

any act(s) or omission(s) which deliberately withholds the services of the terminating party from Freed & Weiss LLC without the prior written consent of the other party, either Eric D. Freed or Paul M. Weiss." Doc. 13-1 at 25. But as it stands, the amended complaint merely asserts a legal conclusion, without providing a factual allegation from which the court could determine whether or not that legal conclusion (assuming the factual allegations are true) is correct. The court will accordingly disregard the amended complaint's legal conclusion that Weiss "voluntarily terminated from the LLC."

Thus, under the pleadings as they now stand, Freed cannot bring this lawsuit because he seeks to assert directly a claim that belongs only to the LLC, and the LLC cannot bring this suit because the amended complaint does not plausibly suggest that a majority of its member-managers consented to the suit. The amended complaint accordingly is dismissed, though the dismissal is without prejudice to Plaintiffs filing a second amended complaint that attempts to establish that either or both may properly bring this suit.

**Conclusion**

For the reasons stated above, Chase's motion to dismiss is granted. The dismissal is without prejudice, and Plaintiffs are given leave to file a second amended complaint by September 4, 2012. If Plaintiffs do not replead by that date, the case will be dismissed with prejudice. If Plaintiffs do replead, the second amended complaint must establish that Freed or the LLC or both are entitled to bring the claim against Chase; also, if Plaintiffs wish to pursue a broad conspiracy claim against Chase, that must be repleaded as well.

August 13, 2012

United States District Judge, Gary Feinerman