UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ERIC D. FREED, | ) | |
| | ) | |
| Plaintiff, | ) | 12 C 1477 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| JPMORGAN CHASE BANK, N.A., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

This lawsuit by Eric D. Freed against JPMorgan Chase Bank, N.A., arises from a dispute between Freed and Paul M. Weiss, who for many years were name partners of Freed & Weiss LLC, a law firm recently renamed Complex Litigation Group LLC. Doc. 1-1 at 2-11. Freed alleges that Weiss plotted to exclude him from control of the LLC and to convert its assets to his own use, and that Chase encouraged and assisted Weiss's plot. Freed has sued Weiss himself in at least two other cases, one pending in federal court on the undersigned judge's calendar, *Freed v. Weiss*, 12 C 6720 (N.D. Ill. filed Aug. 21, 2012), and the other before Judge Kathleen Pantle of the Circuit Court of Cook County, Illinois, *Freed v. Weiss*, 2011 CH 41529 (Cir. Ct. Cook Cnty., Ill. filed Dec. 5, 2011).

Freed also has sued The Northern Trust Company, another bank allegedly involved in the alleged Weiss plot. *Freed v. Northern Trust Corp.*, 2012 CH 11303 (Cir. Ct. Cook Cnty., Ill. filed Mar. 28, 2012). Judge Pantle was assigned the *Northern Trust* suit, dismissed it with prejudice, and invited the bank to seek sanctions under Illinois Supreme Court Rule 137. Doc. 51-1. Judge Pantle later granted motions by Northern Trust and the LLC—which was negatively

impacted by Freed's state court suits—to sanction Freed and his state court attorney. The sanctions order, which is reproduced as Doc. 27-12 in *Freed v Weiss*, 12 C 6720 (N.D. Ill.), reflects that Freed unsuccessfully attempted to avoid sanctions against himself by foisting all of the blame upon his state court attorney. That attorney initially represented Freed in this case, but he withdrew in early June 2012, about a month after Judge Pantle dismissed the *Northern Trust* suit. Doc. 21. The attorney's withdrawal motion cited "irreconcilable difference" and "other reasons," Doc. 19 at 1; perhaps the attorney caught wind of the fact that Freed planned to throw him under bus in an effort to escape sanctions in state court.

Freed's initial complaint against Chase in this case, which he filed in state court in February 2012, alleged civil conspiracy to commit fraud and tortious interference with contract. Doc. 1-1 at 2–11. After removing the case to federal court, Doc. 1, Chase filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), Doc. 8. Rather than oppose the motion, Freed filed an amended complaint, which added the LLC as a second plaintiff and deleted the tortious interference claim. Doc. 13. Chase again moved to dismiss under Rule 12(b)(6). Doc. 17. The court granted the motion, holding that: (1) the LLC rather than Freed was the real party in interest under Rule 17(a) with respect to the civil conspiracy claim, meaning that the claim could be brought only by the LLC itself or by Freed derivatively on its behalf; and (2) Freed did not sue derivatively, and the amended complaint did not sufficiently allege that Freed had the authority to direct the LLC to sue without the consent of Weiss, the LLC's other member. 2012 WL 3307091, at *4-7 (N.D. Ill. Aug. 13, 2012).

The court gave Freed leave to file a second amended complaint, Doc. 34, which he did, Doc. 42. The second amended complaint is brought on behalf of Freed alone, not the LLC; Freed alleges that he disassociated from the LLC on August 21, 2012, two weeks before the

second amended complaint was filed. Doc. 42 at ¶ 18. The second amended complaint drops the civil conspiracy claim and instead alleges that Chase is liable to Freed under Illinois law for (1) tortious interference with the partnership agreement between Freed and Weiss and (2) aiding and abetting Weiss's alleged breach of fiduciary duties that Weiss owed to Freed.

Chase has again moved to dismiss under Rule 12(b)(6). Doc. 49. Chase argues that Freed's two new claims, like the civil conspiracy claim in the amended complaint, actually belong to the LLC because Freed is alleging harms to the LLC that affected Freed only indirectly, in his capacity as a member of the LLC. If Chase is correct, then Freed can pursue the claims only via a derivative action in the LLC's name, which the second amended complaint does not seek to do. *See* Fed. R. Civ. P. 23.1 (setting forth the requirements for pleading a derivative action). Chase also argues that Freed's allegations do not plausibly state a tortious interference claim or an aiding and abetting claim.

Chase's motion is denied. The second amended complaint's allegations, taken as true, establish that Freed is the real party in interest with regard to the two claims. The tortious interference claim alleges that Chase induced Weiss to breach Freed's partnership agreement with Weiss, and claims arising out of the breach of that contract, such as a claim that Chase tortiously interfered with the contract, plainly belong to Freed under Rule 17(a). And Illinois law provides that a manager of an LLC like Weiss owes fiduciary duties to the LLC's members. The second amended complaint also adequately pleads that Chase committed both alleged torts.

**Background**

In considering Chase's motion to dismiss, the court will assume the truth of the second amended complaint's factual allegations, though not its legal conclusions. *See Munson v. Gaetz*, 673 F.3d 630, 632 (7th Cir. 2012); *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th

Cir. 2010). The court must consider "the [second amended] complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n. 1 (7th Cir. 2012). The following facts are set forth as favorably to Freed as permitted by the second amended complaint and the other materials that must be considered at the Rule 12(b)(6) stage. It bears mention that many of Freed's allegations are hotly disputed both here and in Freed's pending lawsuits against Weiss.

Freed and Weiss were the two members and managers of the LLC, a law firm specializing in bringing class actions. Doc. 42 at ¶¶ 2, 15, 19. Freed and Weiss entered into a contract, the "Partnership Agreement," to govern their relationship with regard to the LLC's operations. *Id.* at ¶¶ 2, 16. The Agreement entitled Freed to 53% of the LLC's profits, with the remaining 47% going to Weiss. *Id.* at ¶ 20; Doc. 42-1 at ¶ 7. To cover the LLC's costs of doing business, Freed made a series of loans to the LLC from his personal funds; these loans were the LLC's primary source of financing. Doc. 42 at ¶¶ 24-25. The Agreement provided that the loans were to be repaid whenever the LLC collected attorney fees and expenses. *Id.* at ¶¶ 27-28; Doc. 42-1 at ¶¶ 9-10.

As early as December 2008, Weiss and his wife, Jamie Saltzman Weiss ("Saltzman"), concocted a plot to eliminate Freed from the LLC and to divest him of the funds to which he was entitled under the Partnership Agreement. Doc. 42 at ¶¶ 13, 29. Without Freed's knowledge or authorization, Weiss and Saltzman opened bank accounts with Chase, falsely representing to Chase that Weiss was the LLC's sole member and manager and that he therefore had full authority over the deposited funds. *Id.* at ¶¶ 30-31, 33-34, 36-39, 41-43, 45. Chase easily could have made an independent investigation into the truth of Weiss's assertions, but it did not; had it

done so, it would have found that Weiss's claims to sole authority over the LLC were false. *Id.* at ¶¶ 32, 34-35, 37, 40, 44, 46-47.

Weiss took his scheme to its next stage in March 2011. In response to Freed's withdrawal of some funds from the LLC's accounts, Weiss asserted that Freed had "voluntarily withdrawn" from the LLC and locked Freed out of the LLC's property, computer systems, and bank accounts. *Id.* at ¶ 53. Weiss also transferred LLC funds to which Freed was entitled under the Partnership Agreement, including loan repayments and profit distributions, into the Chase accounts over which Weiss had full control. *Id.* at ¶ 54.

In November 2011, after learning that the funds had been transferred to the Chase accounts, Freed delivered to Chase a written demand that it freeze the accounts immediately. *Id.* at ¶ 56; Doc. 42-7. The letter provided Chase with a copy of the Partnership Agreement, informed Chase that Freed was a member of the LLC and that Weiss lacked authority to transfer or use the LLC's funds unilaterally, and demanded that Chase freeze all funds held in the LLC's accounts. *Ibid.* Instead of complying, Chase (acting through an employee) contacted Weiss, alerted him to Freed's freeze demand, advised Weiss that the accounts likely would be frozen in response to the demand, encouraged Weiss to move the funds out of the accounts before they could be frozen, and aided him in doing so by helping him to obtain a $750,000 cashier's check and to move that money from Chase to Northern Trust. Doc. 42 at ¶¶ 3, 57-58, 67-68. Weeks later, the same Chase employee helped Weiss arrange to move other funds, which were then about to be deposited in the Chase accounts, to another bank. *Id.* at ¶ 59.

At the time Chase took these actions, it was aware of the Partnership Agreement's terms and of Weiss's plot to take control of the LLC's funds (including money owed to Freed to repay his loans to the LLC) in violation of the Agreement. *Id.* at ¶¶ 61, 64-66, 74. Without Chase's

-5-

assistance, Weiss would have been unable to misappropriate the funds when Freed delivered his freeze demand. *Id.* at ¶¶ 69-71. As of late 2011, when Weiss improperly transferred the funds out of the Chase accounts, Freed was owed at least $500,000 in repayments for loans he made to the LLC, as well as millions of dollars in profit distributions. *Id.* at ¶¶ 72-73.

## Discussion

The parties agree that Illinois law applies to Freed's claims, so that is the law the court will apply. *See McFarland v. Gen. Am. Life Ins. Co.*, 149 F.3d 583, 586 (7th Cir. 1998). Freed claims that Chase tortiously interfered with the Partnership Agreement by encouraging and assisting Weiss to remove the funds from the Chase accounts after receiving Freed's freeze demand. Freed also claims that, by the same actions, Chase aided and abetted Weiss's breach of fiduciary duties he owed to Freed. The two claims are considered in turn.

### I. Tortious Interference with Contract

Chase argues first that Freed's tortious interference claim fails under Rule 17(a) because it belongs to the LLC rather than to Freed personally. The court's order dismissing the amended complaint provides context for this argument. The amended complaint alleged that Chase had joined Weiss in a civil conspiracy to commit fraud, which Weiss carried out by converting the LLC's funds to his own use. The court held that Freed could not properly bring that claim in his individual capacity. 2012 WL 3307091, at *4-5. As the court explained, because the amended complaint alleged that Weiss fraudulently misappropriated funds from the LLC rather than from Freed himself, Weiss's taking of the funds injured Freed only derivatively, in his capacity as a member of the LLC. *Id.* at *5 ("misappropriating a company's assets is an archetypical example of harm to the company requiring a derivative action"). The court added that although Freed had "standing" to bring the claim in the constitutional sense, Freed was not the "real party in interest

under Rule 17(a), which requires that every action 'be prosecuted in the name of the real party in interest.'" *Ibid.*; *see Frank v. Hadesman & Frank, Inc.*, 83 F.3d 158, 159 (7th Cir. 1996) ("'Standing' is a misnomer, because Frank has alleged injury in fact. His investment in Hadesman & Frank, Inc., has declined in value. Frank's problem is not standing (in the sense that the complaint does not allege a 'case or controversy' justiciable under Article III) but the identity of the real party in interest [under Rule 17(a)].").

Rule 17(a) "is a procedural rule requiring that the complaint be brought in the name of the party to whom that claim 'belongs' or the party who, according to the governing substantive law, is entitled to enforce the right." *Rawoof v. Texor Petrol. Co.*, 521 F.3d 750, 756 (7th Cir. 2008) (internal quotation marks omitted). To the extent that Freed sought to prosecute the amended complaint's civil conspiracy claim in his own name, the claim was undermined by the legal principle (applicable to LLCs as well as to corporations) that "an action for harm to the corporation must be brought in the corporate name. When investors have been injured in common, they must continue to act through their collective—the corporation." *Frank*, 83 F.3d at 160. In other words, for purposes of Rule 17(a), the amended complaint's civil conspiracy claim "belonged" to the LLC, not to Freed, because the claim alleged that Weiss had stolen money from the LLC, not from Freed. And because the amended complaint did not sufficiently allege that the LLC had authorized the suit, it was dismissed.

Chase incorrectly argues that the second amended complaint's tortious interference claim suffers the same defect as the amended complaint's civil conspiracy claim. The breach of contract that underlies the tortious interference claim is Weiss's alleged breach of the Partnership Agreement. The Agreement was between Freed and Weiss as individuals—the LLC was not a contracting party—and gave Freed the right to repayment of his loans to the LLC.

Doc. 42-1 at ¶¶ 9-10. It does not matter to Freed's status as a Rule 17(a) real party in interest that the LLC held the funds from which Freed was to be repaid; if A contracts with B to pay B money out of the funds of an LLC that they both control, and then A reneges, the fact that the funds reside in the LLC is irrelevant to the fact that B's contractual rights have been breached, a breach that harms B directly and not indirectly in his capacity as a member of the LLC. Thus, if Weiss breached the Agreement by causing Freed's loans to the LLC not to be repaid, Weiss violated contractual rights belonging to Freed personally, not to the LLC or to all its members in common. By the same token, Chase's alleged inducement of Weiss's alleged breach harmed Freed directly rather than indirectly through his membership in the LLC. In short, a claim for breach of the Agreement, along with other claims that arise out of the breach, "belongs" to Freed, making him the Rule 17(a) real party in interest as to the tortious interference claim.

Chase next argues that Freed has not adequately pleaded the claim. A tortious interference with contract claim under Illinois law has five elements: "(1) the existence of a valid and enforceable contract between the plaintiff and a third party; (2) defendant's awareness of the contract; (3) defendant's intentional and unjustified inducement of a breach; (4) defendant's wrongful conduct caused a subsequent breach of the contract by the third party; and (5) damages." *Echo, Inc. v. Timberland Machs. & Irrigation, Inc.*, 661 F.3d 959, 968 (7th Cir. 2011); *see also Complete Conference Coordinators, Inc. v. Kumon N. Am., Inc.*, 915 N.E.2d 88, 93 (Ill. App. 2009). Chase argues that the second amended complaint does not adequately allege the second, third, fourth, and fifth elements.

Freed has sufficiently pleaded the second element, that Chase was aware of the Partnership Agreement. The second amended complaint alleges that Freed delivered to Chase a freeze demand asserting that Weiss was violating the Agreement by wrongfully asserting sole

authority over the funds in the Chase accounts, and further alleges that Freed supported his assertion with a copy of the Agreement and other documentation. Doc. 42 at ¶ 56. The complaint also alleges that "Chase Bank had knowledge of the Partnership Agreement at all times material to the disputes between the parties" and that, "[a]t a minimum, Chase Bank had notice of the Partnership Agreement no later than November 28, 2011, when Freed hand delivered a copy of the document to Chase Bank." *Id.* at ¶¶ 63-64.

The second amended complaint likewise adequately pleads the third element, that Chase unjustifiably induced Weiss to breach the contract. "Establishing inducement, in the context of a claim for tortious interference with a contract, requires some active persuasion, encouragement, or inciting that goes beyond merely providing information in a passive way." *In re Estate of Albergo*, 656 N.E.2d 97, 103-04 (Ill. App. 1995) (internal quotation marks omitted). Freed meets that standard with his allegation that Chase's employee "telephoned Weiss and Saltzman, advised them of Freed's correspondence [the freeze demand], informed them that the funds would likely be frozen, and encouraged and assisted Weiss to withdraw the funds before Chase Bank would implement the 'freeze.'" Doc. 42 at ¶ 57. The key word is "encouraged": Assuming that Freed's allegation is true, as the court must at this stage, Chase encouraged Weiss to evade Freed's freeze demand, an act that contributed to Weiss's violation of the Partnership Agreement.

Chase correctly observes that the second amended complaint alleges that Weiss concocted his plan to violate the Agreement well before Chase's act of alleged inducement. Doc. 42 at ¶ 29. But the fact that Weiss had earlier concocted a *general* plan does not mean that Chase did not later induce Weiss to perform a *particular* act in furtherance of that plan, the evasion of the freeze demand and the consequent breach of Freed's personal right under the

Agreement to be repaid the loans he made to the LLC. Freed has sufficiently pleaded inducement, and because Chase does not argue that the inducement was justified, the third element is satisfied.

Chase's arguments as to the fourth and fifth elements—that Chase's wrongful conduct caused Weiss to breach the Partnership Agreement, and that Freed suffered damages—are similarly unpersuasive. The Agreement entitled Freed to repayment of loans that he made to the LLC. Doc. 42-1 at ¶¶ 9-10. The second amended complaint alleges that the LLC owed Freed at least $500,000 in loan repayments at the time Freed made the freeze demand. Doc. 42 at ¶ 72. Thus, by depriving Freed of access to the funds in the Chase accounts by moving those funds from Chase to Northern Trust, Weiss violated his contractual obligations to Freed under the Agreement, causing Freed damages equal to the money of which Freed was deprived by Weiss's wrongful actions. And by encouraging and aiding Weiss's actions, Chase caused Weiss's breach.

Because every element of a tortious interference claim finds support in well-pleaded facts alleged by the second amended complaint, and because Freed is the proper party to bring that claim, Chase's motion to dismiss that claim is denied.

## II. Aiding and Abetting Breach of Fiduciary Duty

The second amended complaint also alleges that Chase aided and abetted Weiss in breaching his fiduciary duty to Freed when it helped Weiss to evade Freed's freeze demand and move the funds out of the Chase accounts. "Under Illinois law, to state a claim for aiding and abetting, one must allege (1) the party whom the defendant aids performed a wrongful act causing an injury, (2) the defendant was aware of his role when he provided the assistance, and (3) the defendant knowingly and substantially assisted the violation." *Heffernan v. Bass*, 467

F.3d 596, 601 (7th Cir. 2006); *see also Grimes v. Saikley*, 904 N.E.2d 183, 196 (Ill. App. 2009); *Thornwood, Inc. v. Jenner & Block*, 799 N.E.2d 756, 767-68 (Ill. App. 2003); *Wolf v. Liberis*, 505 N.E.2d 1202, 1208 (Ill. App. 1987). The second amended complaint meets this standard. It alleges that: (1) Weiss wrongfully injured Freed by depriving him of access to the funds; (2) Chase knew of Freed's legitimate claim on the funds and knew that Weiss lacked legitimate authority to move them, as evidenced by Freed's submission of documentation along with his freeze demand and by the Chase employee's statement to Weiss that the account was likely to be frozen; and (3) that Chase helped Weiss to move the funds anyway.

In arguing that the claim has not been adequately pleaded, Chase relies principally on *Grimes*, 904 N.E.2d at 196-97, which affirmed the trial court's dismissal of an aiding and abetting claim. Doc. 51 at 13-14. But the plaintiff in *Grimes* merely alleged that the defendants had failed to take various actions, leading the court to conclude that "[w]hile allegations of having knowledge and failing to take certain actions may be part of a cause of action for negligence in certain instances, those allegations do not allege that defendants (1) were regularly aware of their regular role in the tortious activity at the time of the assistance or (2) substantially assisted in the principal violation." *Grimes*, 904 N.E.2d at 196. Here, by contrast, Freed has alleged affirmative acts by Chase to assist Weiss's alleged plot: that Chase contacted Weiss after receiving Freed's freeze demand and informed him of the demand so that he could move the funds before the accounts were frozen, and that Chase later promised to help Weiss withdraw further funds that were to be deposited in the Chase accounts. Those allegations distinguish this case from *Grimes* and are sufficient to state an aiding and abetting claim.

Chase also argues that Freed may not bring the aiding and abetting claim in his individual capacity because it belongs to the LLC. Chase is incorrect. Recall that Rule 17(a) asks whether

-11-

a claim has been "brought in the name of the party to whom that claim 'belongs' or the party who, according to the governing substantive law, is entitled to enforce the right." *Rawoof*, 521 F.3d at 756 (internal quotation marks omitted). The "governing substantive law" here is Illinois law because the LLC—the existence of which gave rise to Weiss's fiduciary duties—was organized under Illinois law, Doc. 42-7 at 2, and "the internal affairs doctrine calls for the use of the incorporating state's law." *Frank*, 83 F.3d at 159. The Illinois Limited Liability Company Act provides that a member-manager of an LLC owes fiduciary duties not only to the LLC, but also to the LLC's other members. 805 ILCS 180/15-3. The Act further provides that "[a] member may maintain an action against a limited liability company *or another member* for legal or equitable relief ... to enforce ... [t]he member's rights under this Act." 805 ILCS 180/15-20(a) (emphasis added).

Under the Act, then, Weiss, as a manager and member of the LLC, owed fiduciary duties directly to Freed, the LLC's other member. If Weiss breached those fiduciary duties, Freed's interests were harmed directly. Accordingly, Freed is the right party under Rule 17(a) to bring claims arising from Weiss's alleged breach of his fiduciary duties to Freed, including a claim that Chase aided and abetted the breach.

Chase's initial and reply briefs hint at one other argument potentially applicable to both the tortious interference claim and the aiding and abetting claim: that Chase's actions did not cause Freed to suffer damage because Judge Pantle held that the funds moved by Weiss from Chase rightfully belonged to the LLC. Doc. 51 at 14-15; Doc. 59 at 13-14. Chase may be asking the court to give preclusive effect to Judge Pantle's decision, though it does not say so explicitly; Chase also may be arguing that Judge Pantle is an "intervening actor" who was the true proximate cause of the alleged harm. Chase's argument is poorly developed, so much so

that it is forfeited for purposes of the Rule 12(b)(6) motion. *See Judge v. Quinn*, 612 F.3d 537, 557 (7th Cir. 2010) ("We have made clear in the past that [i]t is not the obligation of this court to research and construct legal arguments open to parties, especially when they are represented by counsel, and we have warned that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.") (internal quotation marks omitted); *Bank of Am., N.A. v. Trinity Lighting, Inc.*, 2011 WL 3489693, at *4 (N.D. Ill. Aug. 9, 2011). Chase may raise the argument later in the case if it wishes, though before doing so it should take note of the governing preclusion principles under Illinois law. *See Michael v. Letchinger*, 2011 WL 3471082, at *9-10 (N.D. Ill. Aug. 5, 2011).

### III. Chase's Supplemental Brief

At a hearing held on this motion on December 3, 2012, and in a supplemental brief filed to support the motion, Doc. 62-1, Chase argues that although the second amended complaint refers to the funds at issue as Freed's, his references to them elsewhere as the LLC's funds—in his original state court verified complaint, in his amended complaint, and in documents attached to the second amended complaint—constitute binding admissions and require dismissal of the second amended complaint on the ground that Freed is not the Rule 17(a) real party in interest. Whether or not those references are indeed admissions, Chase's argument fails because the characterization of the funds as Freed's or as the LLC's does not affect the outcome of this motion. The reasons why the tortious interference claim and aiding and abetting claim "belong" to Freed under Rule 17(a) do not turn on whether the funds were Freed's or the LLC's.

As to the tortious interference claim, Freed and Weiss made the Partnership Agreement in their personal capacities, and so the Agreement gives Freed personal rights to certain funds, rights that Weiss allegedly violated by preventing those funds from being paid to Freed. Thus,

Freed would be the Rule 17(a) real party in interest in a suit against Weiss for breach of the Partnership Agreement, which means that he is the real party in interest in this suit against Chase for tortiously interfering with that contract. *See Ayers v. Ayers*, 2012 WL 1029468, at *3 (C.D. Ill. Feb. 22, 2012). Characterizing the funds as Freed's or the LLC's does not alter this analysis, as illustrated by the hypothetical set forth above about the contract between A and B, both members of the same LLC.

As to the aiding and abetting claim, Weiss is alleged to be a manager and member of the LLC and Freed is alleged to have been a member of the LLC at all relevant times. The Illinois Limited Liability Company Act provides that an LLC member-manager owes fiduciary duties to the LLC's other members, and that a member can sue another member to enforce his rights under the Act. *See* 805 ILCS 180/15-3; 805 ILCS 180/15-20(a). Because the Rule 17(a) analysis depends on the governing substantive law, the Act makes Freed the real party in interest for the aiding and abetting claim. And because Freed could bring a suit in his personal capacity against Weiss for breach of fiduciary duty under Illinois law, it follows that Freed may also sue Chase in his personal capacity for aiding and abetting that breach.

Thus, as it pertains to identifying the real party in interest under Rule 17(a), the tortious interference and aiding and abetting claims in the second amended complaint are different from the amended complaint's civil conspiracy claim. The court dismissed the amended complaint on the ground that the LLC, not Freed in his individual capacity, was the Rule 17(a) real party in interest, because a conspiracy by Weiss and Chase for Weiss to convert the LLC's funds to his personal use, without more, is a tort aimed at the LLC in general. 2012 WL 3307091, at *4-5. The two claims in the second amended complaint allege personal harms to Freed, not a general harm to the LLC that affects Freed only indirectly through his position as a member of the LLC.

Accordingly, Chase's arguments about whether the funds at issue should be characterized as having belonged to Freed or to the LLC are beside the point.

## Conclusion

Chase's motion to dismiss the second amended complaint is denied. Chase shall file its answer by January 7, 2013. This disposition is not intended to suggest, and does not in fact suggest, that the court believes Freed's factual allegations against Weiss and Chase or that the court thinks that Freed will prevail in this lawsuit. Freed did very poorly in his state court suit against Northern Trust, and perhaps he ultimately will do equally poorly in this case. Perhaps not. No such judgments can be made at this early stage of the litigation.

December 12, 2012

United States District Judge