

CERTIFIED COPY

A True Copy

Teste:

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 13-2339 & 13-2340

ERIC D. FREED,

*Plaintiff-Appellant,*

*v.*

J.P. MORGAN CHASE BANK, N.A.,

*Defendant-Appellee.*

ERIC D. FREED,

*Plaintiff-Appellant,*

*v.*

PAUL M. WEISS, RONALD WEISS,
and COMPLEX LITIGATION GROUP LLC,

*Defendants-Appellees.*

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
Nos. 12 C 1477 and 12 C 6720 — **Gary S. Feinerman**, *Judge.*

ARGUED NOVEMBER 7, 2013 — DECIDED JUNE 24, 2014

Before BAUER, MANION, and SYKES, *Circuit Judges.*

BAUER, *Circuit Judge.* This appeal arises from three separate actions filed by plaintiff-appellant Eric D. Freed ("Freed") against numerous defendants: the first case was filed in state court; the second filed in state court and promptly removed to federal court; the third filed in federal court. The district court found that abstention in the two federal court cases was proper under *Colorado River Water Conservation District v. United States,* 424 U.S. 800 (1976), and stayed both cases pending the outcome of the state court proceedings. Freed timely appealed the two Stay Orders, consolidated in this appeal, and argued that the federal cases should be remanded and proceed to trial on the merits. We find that the district court did not abuse its discretion in granting the stays.

## I. BACKGROUND

Freed and Paul M. Weiss ("Weiss") were the sole managing members of a legal practice organization called Complex Litigation Group LLC ("CLG"). Freed claims to have provided "virtually all of [CLG's] operating capital" through loans in excess of $12 million. Pursuant to the partnership agreement between Freed and Weiss, Freed was entitled to repayment of the loans before CLG could make distributions to other members.

According to Freed, shortly after he received a partial repayment from CLG in March 2011, Weiss began taking steps to terminate Freed's control of CLG and to create a new limited liability company without him. Freed argues that Weiss, without Freed's authorization, moved CLG funds held by J.P. Morgan Chase Bank ("Chase") into other accounts, which

Freed lacked signature authority to access. When Freed became aware of Weiss's movement of the CLG funds, Freed demanded that Chase freeze all of the CLG accounts based on the claim that Weiss was unauthorized to move the funds without Freed's approval. Freed contends that Chase employees relayed the freeze request to Weiss, who then removed all funds from Chase through checks payable to him. Freed asserts that Weiss planned to transfer the funds, along with all other CLG assets, to the new company.

In December 2011, Freed, individually and derivatively on behalf of CLG, filed a complaint in state court against Weiss and his wife Jamie Saltzman Weiss ("Saltzman") alleging various business-related improprieties primarily regarding access to CLG records and funds (the "state court proceeding"). In an amended complaint, Freed asserted claims against Weiss for breach of fiduciary duties owed to Freed and the breach of the partnership agreement between Freed and Weiss. Freed also requested a declaratory judgment from the court stating that Weiss's actions constituted a voluntary termination of CLG according to the terms of the CLG partnership agreement. Freed further claimed that Saltzman, an employee of CLG, breached her fiduciary duty of loyalty to CLG and that both Saltzman and Weiss improperly converted CLG assets. Freed's complaint sought temporary and permanent injunctive relief against Weiss and Saltzman to prevent any additional actions in furtherance of their scheme to push Freed out of CLG and to obtain its assets.

In response, Weiss filed a counterclaim in state court on behalf of himself and CLG requesting: (1) a judicial determination to expel Freed from CLG; (2) a temporary and permanent

injunction preventing Freed from continuing to act or hold himself out as a member and manager of CLG; and (3) a decree that Freed be dissociated from CLG before August 2012. Weiss and CLG filed additional counterclaims arguing that Freed was dissociated from CLG in March 2011, when he withdrew CLG funds in violation of their partnership agreement. However, in the event that the state court determined that Freed was not dissociated at that time, Weiss and CLG asked the court to dissolve CLG and to award costs, compensatory damages, and punitive damages against Freed.[1]

In February 2012, Freed filed suit against Chase in state court claiming that Chase facilitated Weiss's unauthorized transfer of CLG funds (the "Chase Lawsuit"). Freed asserted two claims against Chase: tortious interference with contractual rights and aiding and abetting Weiss's breaches of fiduciary duties owed to Freed. Chase timely removed the Chase Lawsuit to federal court based on diversity of citizenship. Once in federal court, Chase brought third-party claims against CLG, Weiss, and Saltzman for indemnity or contribution in the event that Freed was able to recover from Chase.

On August 21, 2012, Freed gave written notice to CLG expressing his voluntarily dissociation and filed a motion to dismiss the state court proceeding without prejudice. That same day, Freed filed an action in federal court against Weiss, his father Ronald Weiss, and CLG asking the court to: (1) force CLG to purchase Freed's distributional interest in CLG for

---

[1] To be clear, Weiss and CLG's filings with the state court were titled "Emergency Petitions." Both the state court and federal court treated these as counterclaims. This court will do the same.

fair value and set the terms for the purchase and (2) award damages against Weiss and Ronald Weiss, a CLG accountant, for breaches of fiduciary duties arising from the alleged transfer and theft of CLG funds (the "Distributional Interest Lawsuit"). In the event that Freed did not receive his distributional interest at the price and subject to the terms set by the court, Freed asked the court to dissolve CLG, supervise its winding-up phase, and distribute CLG's assets. CLG refused to purchase Freed's distributional interest, arguing that either Freed could not dissociate because CLG was a member-managed limited liability company or because Freed already voluntarily terminated his membership in CLG in March 2011.

The defendants in the Distributional Interest Lawsuit, joined by Chase, filed a motion to stay the two federal cases pending the outcome of the state court proceeding pursuant to the *Colorado River* doctrine. After the defendants filed their abstention motions in federal court, the state court granted Freed's motion to dismiss his state court claims. However, because Weiss and CLG had filed counterclaims against Freed, the state court proceeding was not ended. The federal court requested supplemental briefing from the parties as to whether the remaining counterclaims in the state court proceeding justified federal abstention in light of the state court granting Freed's motion to dismiss.

Before the supplemental briefings were due in federal court, Weiss and CLG filed a motion in the state court proceeding requesting immediate trial for the resolution of their counterclaims. The motion urged the court to declare that either Freed dissociated from CLG in March 2011, or that he dissociated prior to his formal, written dissociation

from CLG on August 21, 2012, by behavior that would constitute "dissociative acts" under the partnership agreement. Weiss and CLG renewed their alternative request that the state court dissolve CLG in the event that Freed was found to still be a member of CLG until his written dissociation. Freed responded and requested judgment on the pleadings; that since he formally dissociated from CLG on August 21, 2012, the counterclaims made by Weiss and CLG were moot.

On June 13, 2013, the federal district court entered Stay Orders for both the Chase Lawsuit and the Distributional Interest Lawsuit pending the outcome of the state court proceeding pursuant to the *Colorado River* doctrine. Notably, the district court determined that nine of the ten *Colorado River* factors favored abstention. Freed timely appealed the district court Stay Orders, which have been consolidated for this appeal.

## II. DISCUSSION

Pursuant to *Colorado River,* a federal court may stay or dismiss a suit in federal court when a concurrent state court case is underway, but only under exceptional circumstances and if it would promote "wise judicial administration." *Colorado River,* 424 U.S. at 817–18. The primary purpose of the *Colorado River* doctrine is to conserve both state and federal judicial resources and prevent inconsistent results. *Day v. Union Mines,* 862 F.2d 652, 657 (7th Cir. 1988); *Lumen Const., Inc. v. Brant Const. Co., Inc.,* 780 F.2d 691, 694 (7th Cir. 1985). A district court's decision to stay federal proceedings pending the resolution of a state court action is reviewed under an abuse of discretion standard. *Id.* at 655.

Nos. 13-2339 & 13-2340                                    7

To determine whether a stay is appropriate, the court is required to conduct a two-part analysis. First, the court must determine whether the state and federal court actions are parallel. *AAR Int'l Inc. v. Nimelias Enterprises S.A.*, 250 F.3d 510, 518 (7th Cir. 2001). If the actions are not parallel, the *Colorado River* doctrine does not apply and the court need not address the second part of the analysis. *Interstate Material Corp. v. City of Chicago*, 847 F.2d 1285, 1287 (7th Cir. 1988). If, however, the court determines that the proceedings are parallel, the court must decide whether abstention is proper by carefully weighing ten non-exclusive factors. *AAR Int'l Inc.*, 250 F.3d at 522. The factors are:

> (1) whether the state has assumed jurisdiction over property;
>
> (2) the inconvenience of the federal forum;
>
> (3) the desirability of avoiding piecemeal litigation;
>
> (4) the order in which jurisdiction was obtained by the concurrent forums;
>
> (5) the source of governing law, state or federal;
>
> (6) the adequacy of state-court action to protect the federal plaintiff's rights;
>
> (7) the relative progress of state and federal proceedings;
>
> (8) the presence or absence of concurrent jurisdiction;

(9) the availability of removal; and

(10) the vexatious or contrived nature of the federal claim.

*Tyrer v. City of South Beloit, Ill.*, 456 F.3d 744, 754 (7th Cir. 2006) (citing *Caminiti & Iatarola, Ltd.*, 962 F.2d 698, 701 (7th Cir. 1992)).

As the Supreme Court noted in *Colorado River*, "[n]o one factor is necessarily determinative" and the careful weighing of all factors is necessary to determine whether circumstances exist warranting abstention. 424 U.S. at 818-19; *AAR Int'l Inc.*, 250 F.3d at 518.

## A.  Parallelism of State and Federal Court Cases

For a state court case to be parallel to a federal court case under the *Colorado River* doctrine, there must be "a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *Lumen*, 780 F.2d at 695. The cases need not be identical to fulfill the requirement of parallelism, but the court must examine whether "substantially the same parties are contemporaneously litigating substantially the same issues in another forum." *Interstate Material Corp.*, 847 F.2d at 1288 (quoting *Calvert Fire Ins. Co. v. American Mutual Reinsurance Co.*, 600 F.2d 1228, 1229 n.1 (7th Cir. 1979)).

The court should also examine whether the cases raise the same legal allegations or arise from the same set of facts. *Tyrer*, 456 F.3d at 752. "[A]ny doubt regarding the parallel nature of the [state court] suit should be resolved in favor of exercising jurisdiction." *AAR Int'l. Inc.*, 250 F.3d at 520. A district court

Nos. 13-2339 & 13-2340                                                    9

determination that the state and federal court proceedings are parallel is reviewed by this court *de novo*. *Id*. at 518.

### 1. The State Court Proceeding and the Distributional Interest Lawsuit

Since Freed is the plaintiff in both cases, we will first examine whether the other parties in the state court proceeding and the Distributional Interest Lawsuit are the same or "substantially the same." One way that parties in separate actions are considered substantially the same under the *Colorado River* doctrine is when they have "nearly identical" interests. *Caminiti*, 962 F.2d at 700.

In the state court proceeding, the defendants are Weiss and Saltzman. After the filing of counterclaims, CLG became aligned with Weiss. In other words, the defendants in the state court proceeding at the time of the request for abstention were Weiss, CLG, and Saltzman, a third party accomplice accused of assisting Weiss in his actions against Freed. The same is true for the Distributional Interest Lawsuit: the defendants are Weiss, CLG, and Ronald Weiss, another individual Freed claims to have assisted Weiss in breaching the partnership agreement and his fiduciary duties. Moreover, while the various defendants are not identical in the two cases, their *interests* are nearly identical: to show that neither fiduciary duties nor the partnership agreement were breached and to have the court determine that Freed dissociated from CLG in March 2011, or in the alternative, to dissolve CLG and distribute its assets accordingly. The parties' interests are substantially the same.

Next, we look to see whether the issues in the two cases are substantially the same. As previously detailed, the state court proceeding brought by Freed centers on a scheme concocted by Weiss to exclude Freed from CLG and take CLG assets. In their counterclaims, Weiss and CLG argue that Freed dissociated from CLG in March 2011, and even if he had not dissociated at that time, his actions after March 2011 should result in his expulsion from CLG. The counterclaims further request in the alternative that the court dissolve CLG and determine the distribution of its assets. Both Freed's Distributional Interest Lawsuit and state court proceeding allege that Weiss breached his fiduciary duties owed to Freed and the partnership agreement.

Freed's Distributional Interest Lawsuit additionally asks the court to assess the fair value and terms of purchase of his distributional interest in CLG at the time of his dissociation. *See* 805 ILCS 180/35–60(a) ("A limited liability company shall purchase a distributional interest of a member for its fair value determined as of the date of the member's dissociation."). Freed argues that the resolution of his distributional interest claims will not be resolved in the state court. We disagree.

Essential to Freed's request in the federal court is his claim that he voluntarily dissociated from CLG on August 21, 2012, not March 2011, as alleged by Weiss. Thus, the Distributional Interest Lawsuit turns on the determination of when Freed dissociated under the partnership agreement; the precise subject of the counterclaims in the state court proceeding. The federal court cannot determine the value of Freed's distributional interest until the claims brought in state court are resolved. Similarly, Freed asserts in both cases that Weiss

breached the partnership agreement as well as fiduciary duties owed to Freed. The factual allegations and legal analyses in the cases largely overlap, and the issues will be resolved largely by referencing the same facts and evidence. Therefore, the issues in the two cases, while not identical, are substantially the same.

Freed then claims that since Ronald Weiss was not a defendant in the state court proceeding, the resolution of the claims in state court will not dispose of his "separate" allegations in the Distributional Interest Lawsuit against Ronald Weiss, a CLG accountant, who Freed contends breached fiduciary duties when he prepared fraudulent financial records to facilitate Weiss's transfer of CLG funds from Chase accounts. We disagree.

"[T]he parallel nature of the actions cannot be destroyed by simply tacking on a few more defendants, neither can it be dispelled by repackaging the same issue under different causes of action." *Clark v. Lacy*, 376 F.3d 682, 686–87 (7th Cir. 2004). The decision to exclude Ronald Weiss from the original state court proceeding was entirely Freed's choice. As the district court correctly determined, Freed's action against Ronald Weiss is derivative of his claim against Weiss. If the state court were to determine that Weiss did not violate the partnership agreement or breach fiduciary duties owed to Freed, then Ronald Weiss could not be held responsible for assisting Weiss in those offenses. If the state court rules in favor of Freed, he will be free to file claims against Ronald Weiss in the future.

Freed additionally argues that the counterclaims filed by Weiss and CLG in the state court proceeding were mooted by his dissociation. Freed states that the only basis for dissolution

argued in the counterclaims is a "deadlock" due to the disagreement between Freed and Weiss, the only member-managers of CLG. According to Freed, the alternative request for dissolution based on deadlock is a legal impossibility because he has already dissociated from CLG. However, as already discussed, the question of whether and/or when Freed dissociated is an issue that has yet to be determined by the state court. We therefore find that the issues and parties in the state court proceeding are substantially similar to the issues and parties in the Distributional Interest Lawsuit, satisfying parallelism under *Colorado River*.

### 2. The State Court Proceeding and the Chase Lawsuit

In the Chase Lawsuit, Freed brought claims against Chase for interfering with contractual obligations and aiding and abetting Weiss in his breaches of fiduciary duties owed to Freed. Chase filed a third-party complaint against Weiss, CLG, and Saltzman repeating Freed's claims and seeking contribution and/or indemnity based upon their conduct. In both cases, Weiss is again aligned with CLG and an accomplice accused by Freed of assisting Weiss in his scheme.

The absence of Chase from the state court proceeding does not necessarily defeat parallelism between the cases for two reasons. *Clark*, 376 F.3d at 686 ("To be sufficiently similar it is not necessary that there be 'formal symmetry between the two actions'") (quoting *Lumen*, 780 F.2d at 695). First, Freed actively chose to exclude Chase as a defendant in the state court proceeding when it could have been joined as a party and there appears to be no legitimate reason for Freed to leave Chase out

of the state court action. Second, the Chase Lawsuit claims are derived from the exact scheme and conduct Freed alleges in the state court proceeding: that Weiss was taking actions to (1) eliminate Freed from his control of CLG and (2) take all of CLG's assets without authorization, including funds to which Freed was specifically entitled.

In order for Freed to bring claims against Chase for assisting Weiss, he must first prove that Weiss breached the partnership agreement as well as fiduciary duties owed to Freed. If the state court finds that Freed dissociated from CLG in March 2011, as argued in Weiss's counterclaims, then Weiss did not violate the partnership agreement or breach any fiduciary duties and Freed has no cause of action against Chase. Only after the state court resolves whether Weiss violated obligations to Freed can Freed try to hold Chase liable for assisting in that wrongdoing.

In short, the claims in both federal cases are premised upon the scheme that is now before the state court. A resolution in state court of two issues—when Freed dissociated from CLG and whether Weiss breached the partnership agreement or fiduciary duties owed to Freed—is necessary before either of the federal cases can be decided. For this reason, it was rational for the district court to determine that the "state court litigation will be an adequate vehicle for the complete and prompt resolution" of the larger dispute between Weiss and Freed that rests at the heart of this appeal. The cases rely on the same set of facts, present substantially similar legal issues, and involve substantially the same parties. We agree with the district court's finding that the federal actions are parallel to those at issue in the state court proceeding.

### B.  The Ten Factors of *Colorado River* Abstention

We now turn to the second part of the *Colorado River* analysis, which requires the court to consider the ten non-exclusive factors listed above. The district court is given the discretion to apply more significant weight and analysis to those factors that are most relevant to the case at hand. *Clark*, 376 F.3d at 688. "Given the flexible nature of the ten-factor balancing test, we are reluctant to tinker with the district court's assignment of weight to any particular factor." *Id*. Here, the district court found nine of the ten factors weighed in favor of abstention. Freed argues that none of the ten factors weigh in favor of abstention. We review the district court's consideration of the ten *Colorado River* factors for an abuse of discretion. *Tyrer*, 456 F.3d at 751.

### 1.  Whether the State has Assumed Jurisdiction Over Property

The information and arguments presented to the district court demonstrate that the state court assumed jurisdiction over the bank accounts in which Freed claims to have property rights. Freed concedes that the state court precluded him from putting holds on CLG accounts and restricted access to CLG property. Those actions sufficiently demonstrate that the state court assumed jurisdiction over property relevant to the claims in this appeal. Therefore, the first factor weighs in favor of abstention.

### 2.  The Inconvenience of the Federal Forum

Since the federal and state cases in this appeal are both pending in Chicago courts, the federal forum is not inconvenient and the second factor weighs against abstention.

### 3. The Desirability of Avoiding Piecemeal Litigation

The district court determined that the third factor strongly weighs in favor of abstention. We agree. This factor "does not turn on formal identity of issues but on concerns about the efficient use of judicial resources and the public's perception of the legitimacy of judicial authority." *Id.* at 756. When two courts are given the task to oversee similar proceedings such as pre-trial motions, discovery matters, and the consideration of similar issues, evidence, and witnesses, it is effectively "duplicating the amount of judicial resources required to reach a resolution." *Clark*, 376 F.3d at 687. This redundancy would cause wasteful litigation, hindering judicial economy. *Caminiti*, 962 F.2d at 701. Moreover, as this court stated in *Interstate Material Corp.*, "if both state and federal proceedings were allowed to proceed, inconsistent rulings could jeopardize the appearance and actuality of justice." 847 F.2d at 1290. Here, the state and federal forums have substantially the same parties before them and are litigating substantially the same issues arising from the same set of facts. Staying the federal cases would therefore conserve judicial resources and avoid the potential for the two proceedings to reach inconsistent results. *Clark*, 376 F.3d at 687.

### 4. The Order in which Jurisdiction was Obtained by the Concurrent Forums

The district court correctly noted that Freed first chose to file the state court proceeding in December 2011. The Chase Lawsuit was filed in February 2012, and the Distributional Interest Lawsuit was not filed in federal court until August

2012. At best, this factor could be considered neutral, but more likely favors abstention. *See, e.g., Lumen*, 780 F.2d at 697 (holding that this factor favored abstention when the state action was filed five months before the federal action).

Relying on *Huon v. Johnson & Bell, Ltd.*, 657 F.3d 641 (7th Cir. 2011), Freed contends that the district court gave insufficient consideration to this factor. This argument misconstrues our holding. In *Huon*, we remanded a district court's stay of an action in order to determine if abstention was warranted under *Colorado River*. *Id.* at 649. Noting that this form of abstention requires "rigorous standards," this court found inadequate explanation for abstention when the district court cited only three of the ten *Colorado River* factors and overlooked the other seven. *Id.* at 646–48. This case is distinguishable because the district court carefully addressed each of the ten factors and provided sufficient explanations for its findings.

### 5.  The Source of Governing Law, State or Federal

As conceded by Freed, all claims at issue in this appeal are governed by state law. This court has noted that "a state court's expertise in applying its own law favors a *Colorado River* stay." *Day*, 862 F.2d at 660. Thus, the fifth factor also weighs in favor of abstention.

### 6.  The Adequacy of State-Court Action to Protect the Federal Plaintiff's Rights

Freed argues that forcing him to litigate his claims in state court would inconvenience him and raise the possibility of prejudice against him because he is a Florida citizen. However, Freed chose the forum when he filed both the state court

proceeding and the Chase Lawsuit in the Circuit Court of Cook County. We agree with the district court that Freed effectively undermined his own argument of prejudice when he chose the state court forum for both the state court proceeding and the Chase Lawsuit. We therefore cannot share Freed's concerns that his claims will not be fairly adjudicated in state court.

It is also important to note that the district court did not *dismiss* Freed's federal claims, but rather *stayed* them pending the resolution of the state court proceeding. "[T]he circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding … are considerably more limited than the circumstances appropriate for abstention." *Colorado River*, 424 U.S. at 818. As this court explained in *Lumen*:

> A dismissal, even without prejudice, creates a risk that the federal plaintiff will be time-barred from reinstating his federal suit if the state proceeding does not result in a final decision on the merits. A stay, by contrast, permits the federal court to retain jurisdiction in case the state court action does not meet its anticipated end.

780 F.2d at 698 (internal citations omitted). Here, Freed's substantial rights are protected by granting a stay because it allows him the possibility to revive his federal litigation depending on the outcome in state court or in the unlikely event that the state court action is inadequate**.** Therefore, the sixth factor also favors abstention.

### 7. The Relative Progress of State and Federal Proceedings

Freed argues that the progression of the state and federal proceedings are "about the same" because they are both "stalled." We disagree. In the federal court cases, little has occurred aside from filing the complaints, Chase's answer to Freed's Second Amended Complaint, and Chase filing a third-party complaint. By contrast, the state court case had been in progress for almost two years: the judge already issued several rulings and ordered discovery, numerous appeals have been filed, and the counterclaims are set for trial. It is clear that the state court has expended significantly more judicial resources than the federal court at this point. The district court correctly found that the seventh factor also favors abstention.

### 8. The Presence or Absence of Concurrent Jurisdiction

Freed claims that this factor weighs against abstention because his distributional interest claim is solely governed by the federal court. Freed's argument is flawed for the same reasons his argument against parallelism between the state court proceeding and the Distributional Interest Lawsuit fails. Freed relies on the assumption that he dissociated from CLG in August 2012, and so the counterclaims for the dissolution of CLG and a distribution of its assets filed by Weiss and CLG are moot. As previously explained, however, the determination of Freed's date of dissociation is unresolved. The resolution of that key fact in state court is necessary before any distribution of CLG interests can occur. Thus, the eighth factor also favors abstention.

Nos. 13-2339 & 13-2340                                        19

### 9.   The Availability of Removal

The ninth factor intends to prevent a federal court from hearing claims that are closely related to state proceedings that cannot be removed. *Day*, 862 F.2d at 660. The district court concluded that the state court proceeding was non-removable under 28 U.S.C. § 1441(b)(2) because diversity would provide the only basis for federal jurisdiction. Freed argues that the court ignored his claims against Chase, which were removed to federal court. As detailed above, Freed had every opportunity to join Chase as a defendant in the state court proceeding, eliminating Chase's ability to remove based on diversity. We agree with the district court that the ninth factor also weighs in favor of abstention.

### 10.   The Vexatious or Contrived Nature of the Federal Claim

The district court determined that the tenth factor weighed in favor of abstention due to the "overwhelming evidence that Freed behaved vexatiously by bringing [the Distributional Interest Lawsuit] in federal court and [the Chase Lawsuit] as a separate suit in state court." The record demonstrates that Judge Pantle in the state court proceeding has made a number of rulings unfavorable to Freed, such as granting Weiss's motion to enjoin Freed from filing or pursuing other related actions in state court. Judge Pantle stated that she was "very concerned about an abuse of process here and a manipulation of the system" and concluded that Freed was "seeking to litigate matters at the heart of [the state court proceeding] before other judges in an attempt to evade [Judge Pantle's] orders." In fact, Judge Pantle even initiated contempt proceed-

ings against Freed based on what she believed to be instances of misconduct and unlawful litigation tactics.

Indeed, Freed's filing of various actions in federal court that arise from the same dispute between Freed and Weiss concerning CLG is indicative of an attempt to evade the state court. However, even setting aside these presumptions, this factor can weigh in favor of abstention when the claims and parties in the federal suit could have been included in the original state court proceeding. *See, e.g., Interstate Material Corp.*, 847 F.2d at 1289 (finding that the federal suit could be considered contrived and vexatious when there was "no reason why all claims and all parties could not have been, and still could not be, part of one suit"). Thus, the tenth factor also weighs in favor of abstention.

In sum, several factors strongly favor abstention while numerous others weigh in its favor. Freed has not presented persuasive arguments to establish why any of the factors strongly weigh against abstention. Since the factors more heavily weigh in favor of a stay, we respectfully suggest that the state court should first resolve when Freed dissociated from CLG and whether he has stated a claim for breaches of contract or fiduciary duty against Weiss before any of the derivative federal suits can go forward. Accordingly, we find that the district court did not abuse its discretion in finding that the nature and circumstances of the state and federal proceedings warranted a stay.

### III. CONCLUSION

For the foregoing reasons, we find that the concurrent state and federal proceedings at issue in this appeal are parallel and

that the ten *Colorado River* factors carefully considered by the district court weigh in favor of abstention. The district court's orders to stay the federal cases pending the outcome of the state court proceeding are AFFIRMED.